ENTRY
This cause and matter came on to be heard by the Board of Tax Appeals upon an application filed.' with said Board under date of April 28, 1942, by The Tyroler Realty Co. for an order of the Board to supplement a decision and order theretofore on April 3, 1942, made and entered by it in case No. 6586 *320 on the appeal docket of the Tax Commission of Ohio, finding and determining the true value in money for purposes of taxation for the year 1937 of certain real property of The Tyroler Realty Company located at 240 Euclid Avenue in the City of Cleveland, Ohio; in which application the Board of Tax Appeals was requested to supplement its former order and entry by directing the remission of penalty and interest in respective amounts therein stated, which had been charged by the county auditor against said real property by reason of the nonpayment of a part of the taxes which had been extended against said real property for the year 1937; and which application was filed and docketed by the Board of Tax Appeals as case No. 5618 on the docket of said Board and as an independ-. ent proceeding for the remission of the penalty and interest therein complained of.
Said cause was heard by the Board of Tax Appeals upon the files and record in case No. 6586, above noted, and upon a stipulation of facts made' and filed in case No. 5618 on the docket of the Board. The Board of Tax Appeals upon consideration thereof, finds that the County Auditor of Cuyahoga County, Ohio, in making up his tax list and duplicate of real property of the City of Cleveland and of Cuyahoga County for the year 1937, entered the real property of The Tyroler Realty Company, above referred to, at an aggregate land and building valuation of $994,650.00; that thereafter on May 12, 1938, The Tyroler Realty Company, as the taxpayer with respect to said property, filed with the County Board of Revision of said county a complaint as to the taxable valuation of the property for said year, and in this complaint said company contended that the true value of this property as to land and building was the sum of $685,250.00; and that thereafter on March 20, 1939, the County Board of Revision on a hearing and consideration of said complaint, found and determined the taxable valuation of said property for said year to be the sum of $994,650.00, as theretofore assessed by the county auditor.
On April 18, 1939, The Tyroler Realty Company, acting under the authority of the then provisions of §5610 GC, filed an appeal from this decision and order of the County Board of Revision with the Tax Commission of Ohio; which appeal, as above noted, was filed as case No. 6586 on the docket of the Tax Commission; and on April 3, 1942, the Board of Tax Appeals, hearing this appeal as the suc;essor of the Tax Commission of Ohio, found and determined that the taxable valuation of the property in question, as the same was ibund and determined by the County Board of Revision, was not t';.e true value in money of such property, and found and determined that the true value of said pnperty for the year 1937 was $907,150.00.
It appears further that said taxpayer at the time it filed its complaint with the County Board of Revision with respect to the taxable valuation of this property for the year 1937, acting under the spedfic authority contained in §56(9 GC, under the provisions of whfch section said complaint was filed, tendered and paid to the couniy treasurer taxes on this propeity in an amount computed on a valuation of the property of $685,250.00, which was the claimed true valuation of the property as set out in said complaint. After the Board of Tax Appeals in and by its orcer and entry under date of April 3, 1942, determined that the *321 true value of this property for the year 1937 was $907,150.00 the taxpayer offered to pay the taxes at the 1937 local tax rate of $28.30 per one thousand dollars valuation, upon the sum of $221,900.00, which is the difference between the valuation fixed by the Board of Tax Appeals and the valuation upon which the taxpayer had previously paid the taxes on the property for said year. Computing the taxes on this sum of $221,900.00 at the tax rate for the year 1937, above noted, the additional taxes on the property for said year is the sum of $6,-302.62, which taxes, it appears, the taxpayer is ready and willing to pay. It appears further in this connection; however, that the county auditor has extended a 10% penalty upon said additional amount of taxes, which penalty as charged amounts to the sum of $630.26; and that the county auditor has likewise extended interest on said sum of $6,302.62 at 8% from December 22, 1939, (the date when the unpaid taxes on the property were certified as delinquent) to August 15, 1942, making an additional sum for interest of $1,334.25. As before indicated, the matter now before the Board of Tax Appeals is the application of said taxpayer for an order of said Board remitting this penalty and interest.
In the consideration of the question or questions thus presented this Board is clearly of the view that it does not have any jurisdiction or authority to order the remission of such penalty and interest by amending or supplementing its previous order and entry in case No. 6586, above referred to, in which case this Board on a hearing of the appeal of the taxpayer from the decision and order of the County Board of Revision with respect to the taxable valuation of this property, found and determined that the valuation, as determined by the County Board, of Revision was not the true value of the property in money and. therein found and determined the-true value of such property in the-amount above stated. §5610 GC, under the authority of which the appeal was filed with the Tax Commission of Ohio from the decision and order of the County Board of Revision determining the-taxable valuation of this property, together with §5611 GC, as these sections read at the time said appeal was filed, limited the jurisdiction and authority of the Tax Commission, and of the Board of Tax Appeals as its successor, with respect to the order to be made by such tribunal upon the hearing and determination of such appeal. Under these sections of the General Code the only authority conferred on the Board oi Tax Appeals with respect to this question was to “ascertain and determine-the true value in money of the property complained <jf and certify its action to the county auditor”; which officer on such certification is required to “correct the tax list and duplicate in the manner provided by lav for making corrections thereon”. No authority was conferred upon the Board of Tax Appeals by these sections of the General Code -to make and' certify to the county auditor any order with respect to any penalty or interest charged by the county-auditor on such pait of the taxes on the property which remained unpaid and delinquent on the tax list and duplicate fi>r said year. And any and all qtestions that have arisen between the taxpayer and the taxing authorities of said county with respect to such penalty and interesi are to be determined by this or some other tribunal pursuant to jurisdiction *322 .and authority other than that conferred upon the Board of Tax Appeals as the successor of the Tax Commission with respect to appeals from the County Board of Revision.
In this connection it is noted that by §1464-1 GC, as amended 119 O. Ii. 430, the authority provided by §5624-10 GC, with respect to the remission of taxes and penalties illegally assessed, has been conferred upon the Board of Tax Appeals. As to this, §5624-10 GC, provides that “The Tax Commission of Ohio (now Board of Tax Appeals) nay remit taxes and penalties theieon, found by it to have been illegally assessed, and such penalties as have accrued or may accrue, in consequence of the negligence or error of an officer required to perform a duty relating to the assessment of property for taxation, or the levy or collection of taxes”. In connection with the provisions of §5624-10 GC, it is pertinent to note that §5624-11 GC, provides that “no such taxes, assessments or penalties in excess of $100.00, shill, in any case, be remitted until liter ten days notice in writing oi the application to have same remitted has been served upon the prosecuting attorney and the county aulitor of the county where such taz.es and assessments were levied anc proof of such service has been filed with the commission”. Speaiing of §5624-10 GC, the court in its opinion in the case of State, ex rel., v Zangarle, 126 Oh St 118, 120, said that this section “provides a method of procuring the remission of taxes (and penalties) illegally assessed in consequence of tie negligence or error of an officer in the performance of his duty”. With respect to the application of the provisions of §5624-10 GC, to the questions presented by the application filed by the tazjpayer in this case, it is observed that in so far as the questions thus presented arise by reason of the fact that the county auditor in making up his tax list and duplicate for the year 1937, assessed this property at a valuation in excess of the valuation thereafter found and determined by the Board of Tax Appeals, they are not within the purview of §5624-10 GC; and this for the reason that the action of the county auditor in - assessing this property for taxation for the year 1937 at a valuation in excess of that thereafter determined by the Board of Tax Appeals, and in carrying the property on the tax list and duplicate for said year at such excessive valuation, was not “negligence or error” on the part of the county auditor as these terms are used in §5624-10 GC, but, with respect to the later action of the Board of Tax Appeals, was a fundamental error of judgment on the part of said officer, which could be corrected only as was done in this case by complaint to the County Board of Revision and thereafter by appeal to the Tax Commission of Ohio.
*323 *322 As before noted herein, the penalty and interest complained of in this proceeding have been charged by the county auditor on that part of the taxes on this property which were computed by, him on that part of the valuation of the property represented by the difference between the valuation' of the property as claimed by the’ taxpayer in its complaint filed with the County Board of Revision and the valuation of the property as finally determined by the Board of Tax Appeals. In this situation it is quite clear, as pointed out by the attorney general in an opinion under date of September 23, *323 1929, O. A. G. 1929, Vol. II, p. 1400, that the mere pend-ency of proceedings to secure a reduction in the assessed valuation of taxable property, whether by complaint filed with the county board of revision or by appeal to the Tax Commission, (or by an appeal to the court) does not of itself affect the liability of the taxpayer for the payment of the taxes upon the valuation of the property as finally determined, or the liability of such taxpayer for the payment of any penalty for the nonpayment of such taxes within the time required by law. With respect to this Question, however, it is noted that §5609 GC, under the authority of which this taxpayer filed its appeal with the County Board of Revision, provides, inter alia, as follows:
“The treasurer may accept any amount tendered as taxes upon property concerning which a complaint is then pending, and computed upon the claimed valuation as set forth in complaint, and if such tender is not accepted no penalty shall be assessed because of the nonpayment thereof. The acceptance of such tender, however, shall be without prejudice to the claim for taxes upon the balance of the valuation or assessment. A like tender may be made, with like effect, in case of the pendency of any proceeding in court based upon an allegedly excessive or illegal valuation.”
In this connection §5609 GC, referring to a complaint filed with the County Board of Revision under the authority of this section, further provides:
“The determination of any such complaint shall relate back to the date when the lien for taxes for the current year attached, or as of which liability for such year was determined, and liability for taxes, and for any penalty for nonpayment thereof within the time required by law, shall be based upon the valuation or assessment as finally determined.”
As a statutory enactment of like effect, see §5611-3 GC.
In the Opinion of the Attorney General, above referred to, that officer on a consideration of the above quoted provisions of §5609 GC, to a question such as that here presented held:
“Where, during the pendency of successive proceedings filed by a taxpayer before the county board of revision and the tax commission and in the Common Pleas Court to secure a reduction in the assessed valuation of his property, such taxpayer tenders and pays to the county treasurer taxes on what the taxpayer contends is the correct valuation of such property, and thereafter the Common P’eas Court fixes and determines the valuation of such property at an amount of money in excess of that upon which taxes were tendered ■ and paid, the county treasurer is authorized to collect the unpaid taxes upon such property based upon the difference between the .determined valuation of the property and the valuation upon which taxes have been tendered and paid, and he is likewise authorized to collect from said taxpayer the penalty provided by law for the nonpayment of taxes at the time required by law upon the difference between the determined valuation of the property and the valuation upon which taxes were tendered and paid.”
*324 The attorney general in reaching this conclusion on the question there presented, followed a former opinion of that office found in O. A. G. 1921, Vol. II, p. 1188, in which the then attorney general, discussing a like question, said:
“The precise question is as to whether the partial payment or tender is to have the effect of preventing the imposition of any penalty, no matter what will be the ultimate determination of the complaint or ‘petition in error.’ Of course, if the final determination ■of the complaint or ‘petition in error’ is upon a basis which would produce no greater amount of taxes than that paid or tendered, no question can arise; for in that ■case the final determination will be to the effect that the tax had been properly paid or tendered. But if the complainant or plaintiff fails wholly or partially to secure a reduction of the assessment or valuation to such amount as will bring the tax down to the amount tendered or paid, the question ■which has been stated exists.
“In the opinion of this department, the effect of a payment or tender is to destroy the basis of the penalty with respect only to the amount of taxes thus paid or tendered; so that if the amount of taxes based upon the ultimate determination of the complaint or ‘petition in error’ proves to be greater than that so paid or tendered, the claim for the balance as originally charged or as modified by the ultimate determination of the complaint or ‘petition in error’ remains as the predicate of a penalty.
“The reasons for this conclusion will be briefly stated:
“In the first place, it is clear that the tender or its acceptance does not prejudice the claim for taxes upon the balance. This is expressly provided as to the payment and must be also the rule as to the tender.
“In the second place, the claim for the taxes, being saved, relates back, under provisions common to §§5609 and 5611-3 GC, to the date of the original assessment. The provisions referred to expressly declare that liability for penalty for nonpayment shall also date back in like manner.
“In the third place, it is expressly declared in these common provisions that the valuation or assessment as finally determined shall constitute the basis of the imposition of the assessment by relation back in the manner aforesaid.
“In the fourth place, it is to be noted that’ the treasurer may accept ‘any amount’ tendered as taxes, so that if we give to the tender or payment thereunder the effect of destroying all potential liability for penalty, the complainant or plaintiff might tender a mere nominal sum — much less than the amount based upon the valuation as he claims it should be in his complaint or ‘petition in error,’ and escape liability for the penalty, though it is morally certain that the final determination, whether he succeeds or not, will produce a much larger amount of taxes than that which he has tendered or paid. It is very unlikely that the legislature intended any such results.
“Finally, the grammatical construction of the clause which has ultimately to be considered favors the view expressed. It will be noted that the clause provides that ‘no *325 penalty shall be assessed because of the nonpayment thereof.’ What is the antecedent of the relative word with which this clause concludes? Searching the preceding context, we find the phrases ‘any amount tendered as taxes’ and ‘such tender,’ to one or both of which, and to them alone, it could apply. An exact paraphrase of the sentence by expanding the word -v ‘thereof’ so as to exyress its meaning would be as follows:
Í ‘and the treasurer may accept any amount tendered as taxes upon property concerning which a complaint is then pending, and if such tender is not accepted no penalty shall be assessed because of the nonpayment of thé amount so tendered as taxes.’
“In other words, the sentence does not declare that the making of a tender of ‘any amount’ shall, in the event the tender is not accepted, preclude the assessment of a penalty because of the nonpayment of the correct amount; it merely declares that the making of a tender shall, even without acceptance, preclude the charging of a penalty on the amount covered by the tender.
“Inasmuch as this is the limited effect of the clause prohibiting the attaching of the penalty, and inasmuch as the other clauses of the statute which have been examined authorize the imposition of the penalty on the basis of the final determination, nunc pro tunc, the conclusion is reached that in case the amount finally determined in the so-called ‘proceedings in error’ under §§561í-2 et seq. GC is greater than the amount on which the tender was based, the complainant must pay, not only the difference in principal sums, but also the penalty thereon, computed upon such difference.”
Concurring, as we do, with the views expressed in the Opinions of the Attorney General above noted, it may be said that although no penalty can be charged on the taxes tendered and paid by this taxpayer on the valuation of the property as claimed in the complaint filed by it with the County Board of Revision, and no taxes or penalty can be extended or charged on any valuation c-f the property in excess of that finally determined by the Board of Tax Appeals, no reason is seen to question the right of the county auditor to charge the 10% penalty provided, by §5678 GC, on the taxes assessed on that part of the valuation of the property represented by the difference between the valuation of the property on which taxes were tendered and paid by the taxpayer and the valuation of the property as determined by the Board of Tax Appeals. And, speaking wholly aside from the decision of the Supreme Court in the case of Miller v Lakewood Housing Company, 125 Oh St 152, in which it was held that the provisions of §5624-10 GC, do not authorize the remission of interest charged, on the duplicate against delinquent lands, as distinguished from penalties as such, we are of the opinion that the views herein expressed likewise apply to a legal charge for interest on the delinquent taxes extended by the county auditor on the difference in the valuation of the property as claimed by the taxpayer and as thereafter determined by the Board of Tax Appeals. See State, ex rel., v Guckenberger, 134 Oh St 457, 460, 461. In this connection it appears that the interest charged by the county auditor on the taxes assessed on the additional valuation above referred to, is at the rate of 8% per annum from December 22, 1939, "the date when *326 it is alleged by the auditor the taxes were certified as delinquent”, to August 15, 1942. Under the pro'Visions of §5679 GC, the penalties provided for therein and in §5678 ■GC, are in lieu of one year’s interest on the principal amount of the unpaid taxes. Construing the provisions of §5679 GC, in connection with those of §5704 GC, relating to interest charges on delinquent taxes, the attorney general in Opinion 5034 under date of April 17, 1942, held:
“Immediately after each September settlement it is the duty of the county auditor to prepare and certify a list of all delinquent lands in his county. Interest at the rate of eight per cent per annum should be charged upon the total taxes .and assessments against each parcel entered on such list, commencing with the date of the September settlement, upon all taxes and assessments which have been in arrears for at least one year, and upon the remaining portion of ..such taxes and assessments, commencing one year after default. Such charges of interest should be made after certification of the list regardless of whether or not the list has been published as required by §5704 GC.”
Assuming that the penalty and interest here in question, the respective amounts of which are set out in the agreed statement of facts filed herein, have been computed by the county auditor in the manner provided by law as to time and otherwise, we are of the opinion that the application now before us should be denied as to the interest charge therein complained of, as well as to the penalty therein noted. In reaching this conclusion we are, ox course, cognizant of the fact that the taxpayer in filing this application for an order of this Board remitting the penalty and interest charges here in question, did not comply with the provisions of §5624-11 GC, which requires the taxpayer filing such application to serve á copy thereof on the prosecuting attorney and county auditor. Inasmuch, however, as the prosecuting attorney the counsel for the county auditor in this case, has made no point of this question, wo have seen fit to determine the questions presented by this application on their merits aside from a consideration of the provisions of §5624-11 GC, in their application to this case.
In conclusion it may be observed that the Board of Tax Appeals in the consideration of a question of this kind, does not have any equitable jurisdiction or powers such as the Court of Common Pleas might, perhaps, have in a like case where the jurisdiction of that court is invoked under §§12075 et seq GC; but applying the applicable principles of law, as we see them, to the facts appearing in the record of this case, we are of the opinion that the application filed by The Tyroler Realty Company, the taxpayer with respect to the property here in question, should be, and the same hereby is, denied.
I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation, this day taken with respect to the above matter.
HARRY J. ROSE, Secretary.